## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| AUTO INJECTION TECHNOLOGIES LLC, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| NOVO NORDISK A/S, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Auto Injection Technologies LLC ("AIT" or "Plaintiff") for its Complaint against Defendant Novo Nordisk A/S ("Novo Nordisk" or "Defendant") for patent infringement, alleges as follows:

## THE PARTIES

1.      AIT is organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 140, Marshall, Texas 75670.

2.      Defendant Novo Nordisk A/S, is a corporation duly organized and existing under the laws of Denmark, with a place of business located Nova Alle, 2880 Bagsværd, Denmark and may be served pursuant to the provisions of the Hague Convention.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 1367.

4.     This Court has specific and personal jurisdiction over the Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Upon information and belief, the Defendant has sufficient minimum contacts with this forum because Defendant transacts substantial business in the State of Texas and in this Judicial District.  Further, the Defendant has, directly or through intermediaries, committed and continues to commit acts of patent infringement in the State of Texas, and places its products and/or services, including those accused herein of infringement, into the stream of commerce which terminates in the Judicial District of the Eastern District of Texas, as alleged more particularly below.  For example, on information and belief, the Accused Products are available for purchase in this Judicial District.

5.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant is a foreign company that may be sued in any Judicial District, including the Eastern District of Texas.  The Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District.  On information and belief, the Defendant through its own acts and/or through the acts intermediaries, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

**PATENTS-IN-SUIT**

6.     On July 12, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,387,294 (the "'294 Patent") entitled "Drug Delivery Device."  A true and correct copy of the '294 Patent is available at https://patentimages.storage.googleapis.com/48/73/58/11d611c12601a9/US9387294.pdf.

2

7.      On February 12, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,201,662 (the "'662 Patent") entitled "Injection Device and Assembly Method."    A true and correct copy of the '662 Patent is available at https://patentimages.storage.googleapis.com/15/87/c6/55ceabb952fb25/US10201662.pdf.

8.      AIT is the sole and exclusive owner of all right, title, and interest in the '294 Patent and the '662 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.  AIT also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

9.      The Patents-in-Suit are generally directed at systems for medicinal dosing, dispensing, and delivery.

10.      The '294 Patent generally relates to a drug dosage delivery device which has a reliable dosage setting a dispensing mechanism.  To accomplish this, the device employs a piston rod and a drive member.  The two work in tandem to allow specific dosages to be set, and then allow for dispensing consistent with that set dosage.  This technology invented by David Plumptre, Andrew Mark Lindsay, Catherine Anne MacDonald, Robert Veasey, Garen Kouyoumjian, and Christopher Jones while they were employed at what is now Sanofi-Aventis Deutschland GmbH.

11.      The '662 Patent relates to hand-held injection devices and their injection efficacy. This technology was invented by Anthony Paul Morris, William Marsh, Matthew Jones, Joseph

Butler, David Aubrey Plumptre, and Robert Veasey while they were employed at what is now Sanofi-Aventis Deutschland GmbH.

12.      Upon information and belief, Defendant has had knowledge and notice of the Patents-in-Suit, and its infringement thereof, since they issued.  Defendant was a direct competitor to Sanofi-Aventis Deutschland GmbH, and upon information and belief, monitored or was otherwise aware of its patented inventions, due to Sanofi-Aventis Deutschland GmbH's impact on Defendant's market position, and previous patent litigations between the two parties and/or their subsidiaries and affiliates.  Alternatively, to the extent that Defendant avoided actual knowledge of the Patents-in-Suit, and its infringement thereof, it was willfully blind.  Upon information and belief, to the extent it lacked actual knowledge of infringement, Defendant deliberately avoided learning of infringement despite subjectively believing that there was a high probability that it infringed Sanofi-Aventis Deutschland GmbH patents, and specifically the Patents-in-Suit.  Upon information and belief, Defendant has adopted a policy or practice of not reviewing the patents of others, including those related to Defendant's specific industry and Sanofi-Aventis Deutschland GmbH in particular, thereby remaining willfully blind to the Patents-in-Suit.  Upon information and belief, Defendant lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by Defendant and lacks mechanisms for employees to report patents which they believe Defendant may infringe.  Upon information and belief, Defendant and its employees understood that there was a high likelihood that patents filed on innovations by Sanofi-Aventis Deutschland GmbH read on the Accused Products based on their widely publicized R&D programs, and competitor status.

13.      Defendant has infringed and continues to infringe one or more of the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others

to make, use, sell, offer to sell, and/or import medicament injection devices (the "Accused Products").  For example, the NovoPen Echo and Ozempic.

14.    For example, the NovoPen Echo website has their "HQ" listed as Defendant, and the website is copyrighted by Defendant.



15.    Ozempic is trademarked by Defendant, its website is copyrighted by Defendant, and is "only manufactured" by Novo Nordisk.

---

[1] https://www.novonordisk.com/our-products/pens-and-needles/novopen-echo.html

² https://www.ozempic.com/

<u>**COUNT I**</u>
**(Infringement of the '294 Patent)**

16.    Paragraphs 1 through 15 are incorporated by reference as if fully set forth herein.

17.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '294 Patent.

18.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '294 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '294 Patent including, but not limited to, at least the Accused Products.

19.    Defendant has directly infringed and continues to directly infringe the '294 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '294 Patent.  Upon information and belief, the Accused Products practice the methods and systems covered by the '294 Patent.

20.    For example, Defendant has and continues to directly infringe at least claim 3 of the '294 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a drug delivery device for dispensing one or more doses of a drug, the drug delivery device having a longitudinal axis and being configured to dispense a dose of a drug in a dose dispense operation, as well as being configured to be prepared for a subsequent dose dispense operation in a dose set operation, the device comprising: a drive member for driving a piston rod in a dispense operation and a dose member for actuating the drive member, wherein the dose member is constrained to an axial movement along the longitudinal axis, wherein the drive member has stable and unstable states relative to the longitudinal axis, and wherein in an unstable state the drive member is biased by biasing means towards a stable state.

21.    The Accused Products are drug delivery devices for dispensing one or more doses of a drug, the drug delivery device having a longitudinal axis and being configured to dispense a dose of a drug in a dose dispense operation, as well as being configured to be prepared for a subsequent dose dispense operation in a dose set operation.  For example, the NovoPen Echo is an insulin delivery device, which has a longitudinal axis, that is configured to dispense a dose of insulin in incremental units.

> NovoPen Echo® is a re-usable pen injector designed for single patient use by diabetes patients for the self-injection of insulin. The pen injector uses Penfill® 3 ml cartridges of Novo Nordisk insulin and single-use disposable needles (supplied separately). The pen injector allows the user to dial required doses from 0.5 to 30 units in 0.5-unit increments.

https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf, Introduction, Last Accessed on September 20, 2024



Longitudinal axis

https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf, Page 9, Last Accessed on September 20, 2024

- **Press the dose button** until the dose counter shows "0". The "0" must line up with the dose pointer.
- Check that **insulin squirts** from the needle tip.

  **If no insulin appears,** repeat steps 1-3 until insulin squirts from the needle tip.

  If no insulin appears after several attempts, check the insulin window to see if there is a gap between the black piston rod head and the orange piston, *see illustrations 3A and 3B*. If you do not see any gap, change the needle and test the insulin flow again.

  **The insulin flow test is complete when you see insulin squirt from the needle tip.**

https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf, Page 9, Last Accessed on September 20, 2024



https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf, Page 10, Last Accessed on September 20, 2024

22.    The Accused Products comprise a drive member for driving a piston rod in a dispense operation.  For example, the NovoPen Echo has a drive member for driving a piston rod to dispense insulin.



https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf, Page 9, Last Accessed on September 20, 2024



https://www.novonordisk.com/our-products/pens-and-needles/novopen-echo.html,
Time: 4:11, Last Accessed on Sept 20, 2024

23.    The Accused Products comprise a dose member for actuating the drive member, wherein the dose member is constrained to an axial movement along the longitudinal axis.  For example, the NovoPen Echo has a dose member constrained to an axial movement along the longitudinal axis.



https://www.novonordisk.com/our-products/pens-and-needles/novopen-echo.html,
Time: 4:11, Last Accessed on Sept 20, 2024



https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf,
Page 10, Last Accessed on September 20, 2024

24.    The Accused Products comprise a drive member, wherein the drive member has stable and unstable states relative to the longitudinal axis, and wherein in an unstable state the drive member is biased by biasing means towards a stable state.  For example, the drive member of the NovoPen Echo will be biased to a stable state (0.5 unit increments) if set in a non-stable state.



Source: https://www.novonordisk.com/our-products/pens-and-needles/novopen-echo.html,
Time: 4:11, Last Accessed on Sept 20, 2024

11

> NovoPen Echo® is a re-usable pen injector designed for single patient use by diabetes patients for the self-injection of insulin. The pen injector uses Penfill® 3 ml cartridges of Novo Nordisk insulin and single-use disposable needles (supplied separately). The pen injector allows the user to dial required doses from 0.5 to 30 units in 0.5-unit increments.

https://www.novonordisk.com/content/dam/nncorp/global/en/our-products/pdf/instructions-for-use/novopen-echo/NovoPenEcho-IR.pdf,
Introduction, Last Accessed on September 20, 2024

25.   Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '294 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.   For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.   Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.   Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '294 Patent.   Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '294 Patent, but while remaining willfully blind to the infringement.

26.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '294 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '294 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '294 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '294 Patent.  Defendant performs these affirmative acts with knowledge of the '294 Patent and with intent, or willful blindness, that it causes the direct infringement of the '294 Patent.

27.     AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '294 Patent.

28.     AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '294 Patent in an amount to be proved at trial.

29.     AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '294 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '662 Patent)

30.     Paragraphs 1 through 15 are incorporated by reference as if fully set forth herein.

31.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '662 Patent.

32.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '662 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '662 Patent including, but not limited to, at least the Accused Products.

33.    Defendant has directly infringed and continues to directly infringe the '662 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '662 Patent.  Upon information and belief, the Accused Products practice the methods and systems covered by the '662 Patent.

34.    For example, Defendant has and continues to directly infringe at least claim 1 of the '662 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise an injection device comprising a housing containing a cartridge containing a medicament and a movable bung, wherein the housing comprises an inner thread, a piston rod for moving the bung during dose dispensing, the piston rod comprising an outer thread engaging the inner thread of the housing, and a bearing facing the bung and positioned at a distal end of the piston rod, wherein, in an unused delivery state of the device, the bearing abuts the bung, and a driver coupled to the piston rod for driving the piston rod during dose dispensing.

35.    The Accused Products are an injection devices.  For example, Ozempic is an injection device.

## What is Ozempic®?

Ozempic® (semaglutide) injection 0.5 mg, 1 mg, or 2 mg is an injectable prescription medicine used:

- along with diet and exercise to improve blood sugar (glucose) in adults with type 2 diabetes

- to reduce the risk of major cardiovascular events such as heart attack, stroke, or death in adults with type 2 diabetes with known heart disease

https://www.ozempic.com/why-ozempic/what-is-ozempic.html,
Last Accessed on Sept 20, 2024

36.     The Accused Products comprise a housing containing a cartridge containing a medicament and a movable bung, wherein the housing comprises an inner thread.  For example, Ozempic has a cartridge containing medicament, a movable bung.  On information and belief, the housing comprises an inner thread.



Bung in a cartridge

https://www.youtube.com/watch?v=oj2syKHSUkc
Time:1:35, Last Accessed on Sept 20, 2024



https://www.novonordisk.com.au/content/dam/nncorp/au/en/pdfs/Ozempic-1mg-cmi-v3.0.pdf,
Page 7, Last Accessed on Sept 20, 2024

37.    The Accused Products comprise a piston rod for moving the bung during dose dispensing, the piston rod comprising an outer thread engaging the inner thread of the housing and a bearing facing the bung and positioned at a distal end of the piston rod, wherein, in an unused delivery state of the device, the bearing abuts the bung.  For example, the piston rod in Ozempic moves the bung when dosing.  The piston rod has an outer thread, that engages with the inner thread of the housing and a bearing at the distal end of the piston rod.  As shown below, when not

being used the bearing abuts the bung when it is in an unused delivery state.



https://www.youtube.com/watch?v=oj2syKHSUkc,
Time:1:35, Last Accessed on Sept 20, 2024



https://www.youtube.com/watch?v=oj2syKHSUkc
Time:1:35, Last Accessed on Sept 20, 2024

38.    The Accused Products comprise a driver coupled to the piston rod for driving the piston rod during dose dispensing.  On information and belief, Ozempic has a piston rod coupled to a driver.  The driver drives the piston rod when Ozempic is dosing the user.



**B. Press and hold down the dose button until the dose counter shows 0.** The 0 must line up with the dose pointer. You may then hear or feel a click.

Source: https://www.novonordisk.com.au/content/dam/nncorp/au/en/pdfs/Ozempic-1mg-cmi-v3.0.pdf,
Page 7-8, Last Accessed on Sept 20, 2024



https://www.youtube.com/watch?v=oj2syKHSUkc, Time:1:35, Last Accessed on Sept 20, 2024

39.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '662 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.   For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.   Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.   Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '662 Patent.   Defendant performs these affirmative

acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '662 Patent, but while remaining willfully blind to the infringement.

40.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '662 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '662 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '662 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '662 Patent.  Defendant performs these affirmative acts with knowledge of the '662 Patent and with intent, or willful blindness, that it causes the direct infringement of the '662 Patent.

41.    AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '662 Patent.

42.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '662 Patent in an amount to be proved at trial.

43.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '662 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AIT prays for relief against Defendant as follows:

a.       Entry of judgment declaring that Defendant directly and/or indirectly infringes one or more claims of each of the Patents-in-Suit;

b.       Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit is willful;

c.       An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d.       Enhanced damages pursuant to 35 U.S.C. § 284;

e.       Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

f.       An accounting for acts of infringement;

g.       Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

h.       Such other and further relief as the Court deems just and proper.


Dated:  April 9, 2025                                  Respectfully submitted,

                                                                 /s/ *Vincent J. Rubino, III*
                                                                Vincent J. Rubino, III
                                                                NY Bar No. 4557435
                                                                Email:  vrubino@fabricantllp.com

Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF***
***AUTO INJECTION TECHNOLOGIES LLC***